Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 256 | **DATE** | 11/21/2002 |
| **CASE TITLE** | Glenayre Electronics, Inc. vs. Philip Jackson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Claims Construction Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | NOV 22 2002 | |
| | Notified counsel by telephone. | date docketed | 62 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAP | courtroom deputy's initials | date mailed notice | |
| | | CLERK, U.S. DISTRICT COURT | |
| | | 02 NOV 21 PM 5: 16 | |
| | | FILED ON | mailing deputy initials |
| | | Date/time received in central Clerk's office | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

GLENAYRE ELECTRONICS, INC.,

**DOCKETED**

NOV 2 2 2002

NOV 2 1 2002

Judge Harry D. Leinenweber
U. S. District Court

Plaintiff,

v.

PHILIP JACKSON, an individual,

Case No. 02 C 0256

Defendant.

Hon. Harry D. Leinenweber

PHILIP JACKSON,

Counterclaim-Plaintiff,

v.

GLENAYRE ELECTRONICS, INC. and
PRIMECO PERSONAL
COMMUNICATIONS, L.P.,

Counterclaim-Defendants.

## CLAIMS CONSTRUCTION

Plaintiff Glenayre Electronics, Inc. ("Glenayre") brings this action against defendant Philip

Jackson ("Jackson") seeking "a declaratory judgment that none of its products infringe any claim of

U.S. Patent No. 4,596,900" (Compl. ¶ 1) held by Jackson.  Jackson, by way of an amended

counterclaim filed October 16, 2002, alleges in turn that "Glenayre has infringed at least claims 1,

3, 5, 15, 59, 69, 79 and 112 of the '900 Patent through acts of direct infringement, contributory

infringement and/or inducement in violation of 35 U.S.C. § 271."  (Am. Answer and Countercl.

¶ 12.)  Accordingly, the task presently before the Court is to construe the meaning and scope of

disputed claims 1, 3, 5, 15, 59, 69, 79 and 112 of the '900 patent.

## PREVIOUS LITIGATION

At the outset, the Court notes that certain of the claims at issue here have been previously

construed by Judge Gettleman in *Jackson v. Casio Phonemate, Inc.*, 105 F.Supp.2d 858 (N.D. Ill.

2000) ("*Casio I*") and *Jackson v. Casio Phonemate, Inc.*, 166 F.Supp.2d 1237 (N.D. Ill. 2001)

("*Casio II*") and by Judge Young in *Jackson v. Thomson Consumer Elecs., Inc.*, 139 F.Supp.2d 1003

(S.D. Ind. 2001). Although none of the claim constructions (or other holdings) in those cases is

binding on this Court, the Court has usefully consulted and, where appropriate, relied upon, the

interpretations and conclusions reached therein.

## BACKGROUND

The '900 patent "discloses and claims a set of electronic circuits for remotely controlling

appliances or devices through the use of tones produced by touch-tones telephones." *Thomson*

*Consumer Elecs., Inc.*, 139 F.Supp.2d at 1005. Jackson's invention "can be connected to, for

example, a heating or air conditioning system or a lighting system, and enables a caller to remotely

control the attached appliance." *Casio I*, 105 F.Supp.2d at 861. Jackson's "apparatus uses integrated

circuit digital logic to perform its functions." *Id.* In the instant action, Jackson claims that certain

of Glenayre's products which rely on microprocessors to function – "voice messaging hardware and

software including, but not limited to, the MVP 2120 and MVP 4240" (Am. Answer and Countercl.

¶ 13) – infringe the '900 patent.

## LEGAL STANDARDS

### *Claims Construction*

"Two steps are required to determine whether a patent claim has been infringed: (1) the court

must construe the claim to determine its scope; and (2) the court must determine whether the

properly construed claim encompasses the accused structure." *Casio I*, 105 F.Supp.2d 858 at 863 (citing *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998)). Claim construction is a matter of law reserved for the Court. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). "[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. American Sci. & Eng'g, Inc.*, 200 F.3d 795, 804 (Fed Cir. 1999). Claims are "construed without regard to the accused product," *Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir.1991), and are interpreted through the lens of a "person of ordinary skill in the field of the invention," *Multiform Dessicants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998).

To ascertain the meaning of a patent claim, the Court looks first to intrinsic evidence, which consists of the language of the claim, the specification, and, if in evidence, the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "[W]ords in a claim are generally given their ordinary and customary meaning." *Id.* However, "a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Id.* Thus, because "[t]he specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication," it "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* If in evidence, the prosecution history, which consists of "the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims," *id.*, must also be examined. "The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that

was disclaimed during prosecution." *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995); *cf. Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed Cir. 1997) (noting that "by distinguishing the claimed invention over the prior art [in the prosecution history], [patentee] is indicating what the claims do not cover, [and] is by implication surrendering such protection").

The guidance offered by intrinsic evidence is usually sufficient to determine conclusively the meaning and scope of the claim at issue. *Vitronics*, 90 F.3d at 1583. Accordingly, resort to extrinsic evidence is only appropriate where there is "still some genuine ambiguity in the claims, after consideration of all available intrinsic evidence." *Id.* at 1584. "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries and learned treatises." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995). A court is always free to consult extrinsic evidence, however, if it will assist the court's understanding of the technology underlying the patent. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999).

The claims at issue in this case are "means-plus-function" claims. They are therefore governed by 35 U.S.C. § 112, ¶ 6, which provides as follows:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6. Thus, the "first step in construing a means-plus-function limitation is to identify the function explicitly recited in the claim. The next step is to identify the corresponding structure set forth in the written description that performs the particular function set forth in the claim." *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1369 (Fed. Cir. 2001).

### *Infringement Criteria*

Evaluating an infringement allegation requires comparing the construed claim to the accused device. "Literal infringement of a § 112, ¶ 6 limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification. Functional identity and either structural identity or equivalence are *both* necessary." *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999) (citations omitted). As Judge Gettleman likewise framed the standard in *Casio I*: In order "to meet a means-plus-function limitation, an accused device must (1) perform the identical function recited in the means limitation and (2) perform that function using the structure disclosed in the specification or an equivalent structure." *Casio I*, 105 F.Supp.2d at 863-64 (quoting *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1578 (Fed. Cir. 1993)). Structural equivalence for purposes of section 112, paragraph 6 turns on "whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial." *Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1043 (Fed. Cir. 1993).

Based on the literal infringement standard just articulated, it follows that if the accused device does not perform the "identical function recited in the means limitation," 35 U.S.C. § 112, ¶ 6, then there can be no finding of literal infringement and "section 112, paragraph 6 . . . is not involved." *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987). However, the accused device might still be found to infringe under the doctrine of equivalents if it "performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same result as the claimed invention." *Id.* "[T]he doctrine of equivalents must be applied to individual elements of the claim, not the invention as a whole." *Warner-Jenkinson Co. v. Holton*

*Davis Chem. Co.*, 520 U.S. 17, 29 (1997). "[I]n order for a court to find infringement [under the doctrine of equivalents], the plaintiff must show the presence of every element or its substantial equivalent in the accused device. To be a 'substantial equivalent,' the element substituted in the accused device for the element set forth in the claim must not be such as would substantially change the way in which the function of the claimed invention is performed." *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1533 (Fed. Cir. 1987) (citation and internal quotation marks omitted).

"The determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002). Accordingly, resolving whether Glenayre infringes the '900 patent, whether literally under 35 U.S.C. § 112, ¶ 6 or under the doctrine of equivalents, is outside the scope of the Court's present task, which is limited to claim construction.

### Microprocessor Equivalency

The parties devote many pages of their claim construction briefs to addressing the question whether a microprocessor performing the same function as the digital logic integrated circuitry of the '900 patent is, without more, equivalent to that circuitry as a matter of law. Jackson would have this Court hold that any microprocessor that performs the same function as the discrete logic circuitry of the '900 patent is *per se* equivalent to that circuitry, even if that microprocessor performs the relevant function in an entirely different way. That is clearly not the law.

As Judge Gettleman held in *Casio II*:

> To make a finding of literal infringement or infringement under the
> doctrine of equivalents for a means-plus-function claim, the court
> must compare the '900 patent to the accused device *not just in terms
> of the functions performed by each claim, but also in terms of the way*

> *in which the embodiment of each claim (i.e., its structure) goes about*
> *performing each function.*

*Casio II*, 166 F.Supp.2d at 1242 (emphasis supplied) (*citing Odetics*, 185 F.3d at 1267-68 (holding

that "[f]unctional identity and either structural identity or equivalence are *both* necessary" (emphasis

in original)); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1309

(Fed. Cir. 1998) (holding that "[t]he proper test is whether the differences between the structure in

the accused device and any disclosed in the specification are insubstantial"); 35 U.S.C. § 112, ¶6);

*see also Pennwalt*, 833 F.2d at 934 (holding that "[w]here the issue is raised, it is part of the ultimate

burden of proof of the patent owner to establish, with respect to a claim limitation in means-plus-

function form, that the structure in the accused device which performs that function is the same as

or an equivalent of the structure disclosed in the specification"). This is perfectly consistent with

Judge Gettleman's statement in the same opinion that "'a microprocessor containing digital logic

integrated circuitry, and programmed to perform the same functions [*as performed by the digital*

*logic integrated circuitry of the '900 patent*],' is an 'equivalent' under 35 U.S.C. § 112, ¶ 6 and is

therefore covered by the '900 patent." (emphasis supplied) (citing *Thomson Consumer Elecs., Inc.*,

139 F.Supp.2d at 1008-09).

Judge Gettleman explained in *Casio II* that

> [t]he fatal flaw in [Jackson's] analysis is that he failed to show that
> the accused device *is* programmed to perform the same functions as
> his device, and that the *way in which* the accused device performs
> those functions is equivalent to his device. That is, [Jackson] failed
> to identify the *particular* components within the accused device
> (including any algorithm used by its microprocessor) that allegedly
> perform the "access limiting circuit means" and the "counter means"
> of Claim 5, and he failed to show that those components (and/or that
> algorithm) perform those functions in substantially the same way as
> the "gates," "negation equivalents," "flip-flops," "etc." that the court
> has construed are the corresponding structure in plaintiff's invention.

*Casio II*, 166 F.Supp.2d at 1249 (emphasis in original). Thus, Jackson must ultimately prove not just that a microprocessor in the accused device is programmed to perform the functions recited in the '900 patent claims at issue, he must also show that microprocessor is programmed to perform those functions in substantially the same way as the corresponding individual digital logic circuit elements that are described in the '900 patent.

## CONSTRUCTION OF CLAIMS 1, 3, 5, 15, 59, 69, 79 AND 112

As noted by each party, claims 1, 3, 5 and 15 are essentially linguistically identical to their counterpart claims 59, 69, 79 and 112, the only exceptions being that, in the latter group of claims, "tone signals" are specified as "DTMF tone signals" and each of the various means is specified as an "integrated circuit" means (*e.g.*, claim 1 describes a "control means," whereas claim 59 describes an "integrated circuit control means"). The Court has considered the intrinsic evidence relevant to the '900 patent, as well as the parties' submissions, and hereby holds that claims 1, 3, 5, 15, 59, 69, 79 and 112 have the functions and corresponding structures set forth in the attached Claims Construction chart. Before turning to the content of that chart, however, the Court will first highlight the particulars of the parties' diverging interpretations of the claims at issue (to the extent that there is divergence), and in that process will provide a brief analysis justifying its claim construction in each such case of dispute.

Having reviewed the parties' briefs and respective claim charts, the Court discerns both stylistic differences in presentation, and a host of substantive disputes over the meaning and scope of particular claims. At a general stylistic level, Jackson's claim charts have followed Judge Young's lead in *Thomson Consumer Electronics* by parsing each claim element into constituent phrase fragments and then describing the related functions by simply converting each such fragment

into a "to" phrase. For example, in claim 1, Jackson has broken the claim element "control means responsive to said sequence detection signal for producing a corresponding control signal" into two phrases – "control means responsive to said sequence detection signal" and "for producing a corresponding control signal" – and has identified the function of the former as "to respond to said sequence detection signal" and the latter as "to produce a corresponding control signal." The Court has found it more illuminating to avoid such fragmentation and instead to provide self-contained sentential descriptions of function, adding definition where appropriate (*e.g.*, identifying "said" sequence detection signal in claim 1 as "the sequence detection signal produced by the detecting means"). Thus, the Court's description of the control means of claim 1 reads: "It is the function of the control means to respond to the sequence detection signal produced by the detecting means by producing a corresponding control signal."

Turning to the substantive differences in the parties' claim interpretations, the Court initially notes that, at many points throughout Jackson's claim construction chart, he begins his structural descriptions with the phrase "a portion of decoding and control logic 24." In every instance in which that phrase appears, it is immediately followed by an identification of specific hardware structures contained <u>within</u> decoding and control logic 24 that perform a given function, and therefore seems superfluous. If, for example, one wants to identify "rod and piston" as the relevant structure within a car engine that performs an identified function, including the prefatory phrase "a portion of the car engine" adds nothing of substance. Accordingly, the Court rejects Jackson's suggestion that the locution "a portion of decoding and control logic 24" be used in identifying structure.

### *Claims 1 and 59*

The parties appear to disagree about the structures corresponding to certain of the functions disclosed in claim 1 (and, by extension, claim 59). Preliminarily, the Court notes what appears to be an inadvertent omission (rather than a substantively differing interpretation) in Jackson's identification of structure corresponding to the "second detecting means": although Jackson does identify integrated circuits including DTMF decoder 20 and AND gates 50, 52 and 62, he fails to include flip-flop 58. But flip-flop 58 is clearly a necessary structure in the second detecting means. *See* '900 Patent, col.6, ll. 23-29. Given the clear role that flip-flop 58 plays in the second detecting means, *see id.*, the Court will presume that Jackson's omission of that structure was simply an oversight.

Based on the claim charts, Glenayre and Jackson dispute whether OR gate 64 is structure that corresponds to the function of the "detecting means" – Glenayre believes it is, Jackson believes it is not. The Court agrees with Jackson. OR gate 64 operates to receive the *input* of AND gates 60 and 62, *see* '900 Patent, col.5, ll. 52-54, but does not appear to play a role in the identified function of the detecting means, namely "receiv[ing] tone signals from the phone line, . . . detect[ing] at least one predetermined sequence of predetermined tone signals, and produc[ing] a sequence detection signal corresponding to the predetermined sequence of predetermined tone signals received" (*see* attached Claims Construction chart).

The second disagreement concerns which structures respectively constitute the first and second detecting means. Based on the intrinsic evidence, Jackson appears to be correct that integrated circuits including DTMF decoder 20, AND gates 48, 50 and 60, and flip-flop 56 make up the first detecting means, *see* '900 Patent, col. 6, ll. 12-15, and that integrated circuits including

- 10 -

DTMF decoder 20 and AND gates 50, 52 and 62, and flip-flop 58 make up the second detecting means, *see* '900 Patent, col. 6, ll. 23-29.

### *Claims 3 and 69*

The parties also dispute the function and structure of certain elements disclosed in claim 3 (and, by extension, claim 69). The first such dispute involves the function of the "tone decoding means." Claim 3 of the '900 patent discloses a "tone decoding means for converting each received one of said plurality of tone signals into an encoded multiple-bit digital signal, with each said encoded multiple-bit digital signal having a total number of bits substantially less than the total number of tone signals in said plurality of tone signals." Glenayre's proffered interpretation would limit the size of the "encoded multi-bit digital signal" produced by the tone decoding means to four or fewer bits. Glenayre rests its interpretation on both the '900 patent specification, *see* '900 Patent, col. 4, ll. 14-22, and part of the prosecution history (*see* Glenayre Br. Claim Constr., Exh. K). Jackson objects that this definition of function is unjustifiably limited given the broad language of the claim, which requires only that "each said encoded multiple-bit digital signal hav[e] a total number of bits substantially less than the total number of tone signals in said plurality of tone signals." Jackson argues that "substantially less" need not necessarily mean four or fewer bits, as specified in the preferred embodiment, but should rather be left without explicitly defined parameters. The Court agrees. *See Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1303 (Fed. Cir. 1999) (holding that "the district court erred by importing the functions of a working device into these specific claims, rather than reading the claims for their meaning independent of any working embodiment").

The second dispute turns on whether OR gate 64 is necessary structure in the functioning of the "flip-flop means." Jackson believes it is; Glenayre believes it is not. Based on the '900 patent specification, the Court agrees with Jackson. *See* '900 Patent, Col. 5, ll. 53-59, Col. 6, ll. 15-16, 29-31.

### Claims 5 and 79

The parties are at odds in claim 5 (and, by extension, claim 79) over two claim elements. First, although there is broad agreement about the structures making up the "access limiting means," Glenayre believes DTMF decoder 20 (mislabeled in Glenayre's chart as "DTMF detector 20") should be included, but Jackson does not; on the other hand, Jackson himself believes that break-in prevention system 25, buffer 88 and OR gate 120 should be included, but Glenayre does not. The Court adopts Jackson's view. *See* '900 Patent, Col. 7, ll.17-22, 58-68, Col.8, ll.1, 56-63; *see also Casio II*, 166 F.Supp.2d at 1246.

Second, the parties disagree about the structure corresponding to the function of the "counter means." In line with Judge Gettleman in *Casio I*, the Court holds that the function of the "counter means" is to "count the number of tone signals that are entered until the number of signals entered equals the number of digits in the access code" (*see* attached Claims Construction chart). Glenayre proposes that this function is carried out by counter 124; Jackson counter-proposes that the structures involved instead consist of "[a] portion of break-in prevention system 25; integrated circuit[s] including flip-flops 106, 110, 114, AND gates 104, 102, 100, 105, 112 and 118." The Court concurs with Glenayre. The claim language and specification of the '900 patent draw a distinction between the access limiting circuit means, which recognizes the entry of an access code made up of a predetermined *sequence* of predetermined tone signals, and the counter means, which enables the

detecting means following a predetermined *number* of tone signals. It appears that the only structure disclosed in the specification capable of recognizing a predetermined *number* of tone signals is counter 124. *See* '900 Patent, col. 9, ll. 7-18.

### Claims 15 and 112

Finally, the parties also dispute construction of certain elements of claim 15 (and, by extension, claim 112). Claim 15 discloses an "access limiting circuit means coupled with said detecting means for preventing production of said sequence detection signal until an access sequence comprising a further predetermined sequence of predetermined tone signals is first received on said phone line." (Identical language is used to describe the access limiting means of Claim 5.) The parties differ about which structures are necessary to perform this "access limiting means," with Glenayre proposing a list of hardware drawn from the specification that is far more extensive than that proposed by Jackson. The Court is persuaded by Jackson's interpretation. Nearly all of the additional hardware included by Glenayre relates to the "alternate access sequence detector" depicted in figure 5 of the '900 patent, *see* '900 Patent, Col. 9, l. 52 - Col. 10, l. 48, a structure which does not appear necessary to the function of the "access limiting means" in claim 15, *see* '900 Patent, Col. 9, ll. 22-25 (Describing operation of the access sequence detector depicted in Figure 3: "[I]t will be appreciated that any number of signals in any given sequence may be utilized, including any number of desired 'don't care' or dummy signals at any point in the sequence, without departing from the invention.").

The parties also differ in their identification of structure necessary to perform the "gating circuit means." Glenayre suggests it should be simply "[o]utput of OR gate 120"; Jackson indicates it should be "[i]ntegrated circuits including AND gates 100, 102, 104, 108, 112, 116, 118, 126, flip-

flops 106, 110, 114, OR gate 120." Based on the available intrinsic evidence, the Court agrees with Jackson.

Lastly, the parties disagree about the structures necessary to perform the function of the "disabling circuit means." Jackson believes it should be limited to flip-flop 122; Glenayre believes that, in addition to flip-flop 122, it should also include OR gate 120 and AND gate 55. The Court concurs with Jackson. *See* '900 Patent, Col. 8, ll. 64-67, Col. 9, ll. 14-16.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: *November 21, 2002*

- 14 -

## CLAIMS CONSTRUCTION

| CLAIM 1 | FUNCTION | CORRESPONDING STRUCTURE |
|---|---|---|
| A phone-line-linked, tone-operated control apparatus for remotely controlling various functions of at least one device, said apparatus comprising: | | |
| detecting means coupled to receive tone signals from said phone line, for detecting at least one predetermined sequence of predetermined tone signals and for producing a corresponding sequence detection signal; | It is the function of the detecting means to receive tone signals from the phone line, to detect at least one predetermined sequence of predetermined tone signals, and to produce a sequence detection signal corresponding to the predetermined sequence of predetermined tone signals received. | Integrated circuits including DTMF decoder 20, crystal 40, inverter 47, AND gates 48, 50, 52, 60 and 62, flip-flops 56 and 58. |
| control means responsive to said sequence detection signal for producing a corresponding control signal; | It is the function of the control means to respond to the sequence detection signal produced by the detecting means by producing a corresponding control signal. | Integrated circuits including OR gate 64, flip-flop 66. |
| wherein said detecting means comprises | | |
| first detecting means for producing a first detection signal in response to the reception of a first predetermined sequence of predetermined tone signals and | It is the function of the first detecting means to produce a first detection signal (a type of sequence detection signal) in response to the reception of a first predetermined sequence of predetermined tone signals. | Integrated circuits including DTMF decoder 20, AND gates 48, 50 and 60, flip-flop 56. |
| second detecting means for producing a second detection signal in response to the reception of a second predetermined sequence of predetermined tone signals; | It is the function of the second detecting means to produce a second detection signal (a type of sequence detection signal) in response to the reception of a second predetermined sequence of predetermined tone signals. | Integrated circuits including DTMF decoder 20, AND gates 50, 52 and 62, flip-flop 58. |
| wherein said control means is | | |

- 1 -

| | FUNCTION | CORRESPONDING STRUCTURE |
|---|---|---|
| responsive to said first detection signal for producing a corresponding first control signal and | In response to the first detection signal, it is the function of the control means to produce a corresponding first control signal. | Integrated circuits including OR gate 64, flip-flop 66. |
| responsive to said second detection signal for producing a corresponding second control signal; | In response to the second detection signal, it is the function of the control means to produce a corresponding second control signal. | Integrated circuits including OR gate 64, flip-flop 66. |
| wherein said control means comprises | | |
| dual state means for producing only one of said first control signal and said second control signal at a time; and | It is the function of the dual state means to produce only one first control signal or second control signal at any one time. | Integrated circuits including OR gate 64, flip-flop 66. |
| wherein said first and said second detecting means further include | | |
| gating means coupled in circuit for disabling production of said first and said second detection signals respectively in response to said second control signal and said first control signal, respectively, whereby said apparatus cannot produce said first detection signal and said second detection signal at the same time. | It is the function of the gating means to "prevent[] the production of a given sequence detection signal if the device is already in the state associated with that signal and the same tone sequence is entered a second time." *Jackson v. Casio Phonemate, Inc.*, 105 F.Supp.2d 858, 866 (N.D. Ill. 2000). | Integrated circuits including AND gates 60 and 62. |
| **CLAIM 3** | **FUNCTION** | **CORRESPONDING STRUCTURE** |
| A phone-line-linked, tone-operated control apparatus for remotely and selectively controlling a plurality of operations, said operations being bistable by having only two mutually-exclusive stable operating conditions, said apparatus comprising: | | |

| | | |
|---|---|---|
| detecting means coupled to receive a plurality of tone signals from said phone line, for detecting at least one predetermined sequence of predetermined tone signals and for producing a corresponding sequence detection signal; and | It is the function of the detecting means to receive a plurality (two or more) of tone signals from the phone line, to detect at least one predetermined sequence of predetermined tone signals, and to produce a sequence detection signal corresponding to the predetermined sequence of predetermined tone signals received. | Integrated circuits including DTMF decoder 20, crystal 40, inverter 47, AND gates 48, 50, 52, 60 and 62, flip-flops 56 and 58. |
| control means responsive to said sequence detection signal for producing a corresponding control signal; | It is the function of the control means to respond to the sequence detection signal produced by the detecting means by producing a corresponding control signal. | Integrated circuits including OR gate 64, flip-flop 66. |
| wherein said detecting means comprises | | |
| tone decoding means for converting each received one of said plurality of tone signals into an encoded multiple-bit digital signal, with each said encoded multiple-bit digital signal having a total number of bits substantially less than the total number of tone signals in said plurality of tone signals, | It is the function of the tone decoding means to convert each plurality of tone signals received into an encoded multiple-bit digital signal having a total number of bits substantially less than the total number of tone signals in the plurality of tone signals received. | DTMF decoder 20. |
| logic gate means coupled to receive said encoded multiple-bit digital signals and responsive to said encoded multiple-bit digital signals of predetermined logic content for producing said gated output signals, and | It is the function of the logic gate means to receive the encoded multiple-bit digital signals from the tone decoding means and, in response to the predetermined logic content of such encoded multiple-bit digital signals, to produce gated output signals. | Integrated circuits including AND gates 48, 50 and 52. |
| sequence detecting means coupled to said logic gate means for producing said corresponding sequence detection signal [in] response to production of said gated output signals in a predetermined sequence; and | It is the function of the sequence detecting means to respond to a predetermined sequence of gated output signals produced by the logic gate means by producing a corresponding sequence detection signal. | Integrated circuits including AND gates 60 and 62, flip-flops 56 and 58. |
| wherein said control means comprises | | |

- 3 -

| | | Integrated circuits including OR gate 64, flip-flop 66. |
|---|---|---|
| flip-flop means associated with each said bistable operation, with said flip-flop means producing first state and second state output signals for each said bistable operation, said first state output signal corresponding to one of said mutually-exclusive operating conditions, and said second state output signal corresponding to the other of said mutually-exclusive operating conditions, and wherein said flip-flop means is responsive to a sequence detection signal selectively associated with one of said conditions of fewer than all of said bistable operations for changing from said first state output signal to said second state output signal for said fewer than all of said bistable operations and is responsive to a different sequence detection signal selectively associated with the other one of said conditions of fewer than all of said bistable operations for changing from said second state output signal to said first state output signal for said fewer than all of said bistable operations, and maintaining the state of said flip-flop means until and if and only if said flip-flop means selectively respond to a sequence detection signal selectively associated with the other of said conditions of fewer than all of said bistable operations, said first and second state output signals comprising said control signal. | As explicated in detail by Judge Gettleman in *Casio Phonemate, Inc.*, 105 F.Supp.2d at 869-70:<br><br>"According to the plain language of Claim 3, the '900 patent controls 'bistable' operations, meaning operations that have two mutually exclusive stable operating conditions only. The two mutually exclusive operating conditions of the preferred embodiment of plaintiff's patent are 'on' and 'off.' As plaintiff explained to the patent office on April 26, 1996, 'a single flip-flop means 66 selectively controls both of two, mutually exclusive, stable operating conditions (e.g., "ON" and "OFF") of a bistable operation.' The language of Claim 3 and the detailed description explain that entering a predetermined sequence of predetermined tone signals (such as the tones # and 1), produces a sequence detection signal, which itself produces a corresponding control signal (such as 'off'). As explained in the claim language, a specific and different sequence detection signal is associated with each of the two operating conditions, and part of the function of the flip-flop means is to respond to different sequence detection signals in different ways.<br><br>The claim language reveals that it is also part of the function of the flip-flop means to maintain its state and remain in one operating condition (e.g., on) 'until and if and only if' it receives the sequence detection signal associated with the mutually exclusive operating condition (e.g., off). As plaintiff explained while prosecuting the patent: 'flip-flop means 66 maintains its state until it responds to a sequence detection signal selectively associated with the other of its two mutually exclusive states. Neither the hanging up of the answering circuitry . . . nor any other signal or operation can cause flip-flop means 66 to change its state. It only changes its state when it receives a sequence detection signal[] selectively associated with its opposite state.'<br><br>According to the plain language of the claim coupled with the detailed description, if the appliance is on, for example, it is part of the function of the flip-flop means to not turn the item off until it receives the sequence detection signal associated with the operating condition 'off.' When the flip-flop means receives this sequence detection signal, it is part of the function of the flip-flop means to produce an output signal corresponding to the operating condition 'off,' such as the control signal 'off.' It is also part of the function of the flip-flop means to turn the item back on only if it receives a different sequence detection signal, e.g., the sequence detection signal selectively associated with the operating condition 'on.'" |

| CLAIM 5 | FUNCTION | CORRESPONDING STRUCTURE |
|---|---|---|
| A phone-line-linked, tone-operated control apparatus comprising: | | |
| detecting means coupled to receive tone signals from said phone line, for detecting at least one predetermined sequence of predetermined tone signals and for producing a corresponding sequence detection signal; | It is the function of the detecting means to receive tone signals from the phone line, to detect at least one predetermined sequence of predetermined tone signals, and to produce a sequence detection signal corresponding to the predetermined sequence of predetermined tone signals received. | Integrated circuits including DTMF decoder 20, crystal 40, inverter 47, AND gates 48, 50, 52, 60 and 62, flip-flops 56 and 58. |
| control means responsive to said sequence detection signal for producing a corresponding control signal; | It is the function of the control means to respond to the sequence detection signal produced by the detecting means by producing a corresponding control signal. | Integrated circuits including OR gate 64, flip-flop 66. |
| access limiting circuit means coupled with said detecting means for preventing production of said sequence detection signal until an access sequence comprising a further predetermined sequence of predetermined tone signals is first received on said phone line; | "According to the plain language of the claim, the function of the '900 patent's access limiting circuit means is to prevent a sequence detection signal from being produced until after the phone line receives a predetermined sequence of predetermined tone signals. In essence, it is the function of the access limiting circuit means to prevent a user from accessing a mailbox unless she first enters an access code." *Casio Phonemate, Inc.*, 105 F.Supp.2d at 874. | Break-in prevention system 25; relay 90 and integrated circuits including AND gates 55, 100, 102, 104, 108, 112, 116, 118 and 126, OR gates 85 and 120, exclusive OR gate 95, flip-flops 106, 110, 114 and 122, counters 70 and 124, buffer 88, inverter 125. |
| wherein said access limiting circuit means includes | | |
| gate means coupled with said detecting means for normally preventing response thereof to said tone signals, and | It is the function of the gate means normally to prevent the detecting means from producing a sequence detection signal corresponding to a received sequence of predetermined tone signals. | Integrated circuit including AND gate 55. |

- 5 -

| | FUNCTION | CORRESPONDING STRUCTURE |
|---|---|---|
| counter means coupled to said gate means and responsive to said tone signals for causing said gate means to enable operation of said detecting means following a predetermined number of tone signals received thereby. | "According to the plain language of the claim, the function of the counter means is to count the number of tone signals that are entered until the number of signals entered equals the number of digits in the access code. If the correct tone signals were entered, the counter means enables operation of the detecting means." *Casio Phonemate, Inc.*, 105 F.Supp.2d at 875. | Counter 124. |
| **CLAIM 15** | **FUNCTION** | **CORRESPONDING STRUCTURE** |
| A phone-line-linked, tone-operated control apparatus comprising: | | |
| detecting means coupled to receive tone signals from said phone line, for detecting at least one predetermined sequence of predetermined tone signals and for producing a corresponding sequence detection signal; | It is the function of the detecting means to receive tone signals from the phone line, to detect at least one predetermined sequence of predetermined tone signals, and to produce a sequence detection signal corresponding to the predetermined sequence of predetermined tone signals received. | Integrated circuits including DTMF decoder 20, crystal 40, inverter 47, AND gates 48, 50, 52, 60 and 62, flip-flops 56 and 58. |
| control means responsive to said sequence detection signal for producing a corresponding control signal; and | It is the function of the control means to respond to the sequence detection signal produced by the detecting means by producing a corresponding control signal. | Integrated circuits including OR gate 64, flip-flop 66. |
| access limiting circuit means coupled with said detecting means for preventing production of said sequence detection signal until an access sequence comprising a further predetermined sequence of predetermined tone signals is first received on said phone line; | "According to the plain language of the claim, the function of the '900 patent's access limiting circuit means is to prevent a sequence detection signal from being produced until after the phone line receives a predetermined sequence of predetermined tone signals. In essence, it is the function of the access limiting circuit means to prevent a user from accessing a mailbox unless she first enters an access code." *Casio Phonemate, Inc.*, 105 F.Supp.2d at 874. | Break-in prevention system 25; relay 90 and integrated circuits including AND gates 55, 100, 102, 104, 108, 112, 116, 118 and 126, OR gates 85 and 120, exclusive OR gate 95, flip-flops 106, 110, 114 and 122, counters 70 and 124, buffer 88, inverter 125. |

| | | |
|---|---|---|
| wherein said access limiting circuit means comprises | | |
| gating circuit means for producing a gate signal in response to tone signals making up said access sequence, | It is the function of the gating circuit means to produce a gate signal in response to a correctly-entered access sequence. | Integrated circuits including AND gates 100, 102, 104, 108, 112, 116, 118 and 126, flip-flops 106, 110 and 114, OR gate 120. |
| counter means for producing a count signal upon counting a predetermined number of received tone signals greater in number than the number of tone signals in said access sequence, and | It is the function of the counter means to produce a count signal upon counting a predetermined number of received tone signals greater in number than the number of tone signals in the access sequence. | Counter 124. |
| disabling circuit means responsive to said count signal and said gate signal for disabling production of said sequence detection signal when said access sequence is not present in said predetermined number of received tone signal[s]; | It is the function of the disabling circuit means to disable production of a sequence detection signal if the access sequence is not present in the predetermined number of tone signals counted by the counter means. | Flip-flop 122. |
| whereby a selected number of additional, arbitrary tone signals may be received in addition to the signals of said access sequence without disabling production of said sequence detecting signal, said selected number of additional signals and the number of signals in said access sequence together equalling the number of signals counted by said counter means. | | |

- 7 -

| CLAIM 59 | FUNCTION | CORRESPONDING STRUCTURE |
|---|---|---|
| A phone-line-linked, tone-operated control apparatus for remotely controlling various functions of at least one device, said apparatus comprising: | | |
| integrated circuit detecting means coupled to receive DTMF tone signals from said phone line, for detecting at least one predetermined sequence of predetermined DTMF tone signals and for producing a corresponding sequence detection signal; | It is the function of the integrated circuit detecting means to receive DTMF tone signals from the phone line, to detect at least one predetermined sequence of predetermined DTMF tone signals, and to produce a sequence detection signal corresponding to the predetermined sequence of predetermined DTMF tone signals received. | Integrated circuits including DTMF decoder 20, crystal 40, inverter 47, AND gates 48, 50, 52, 60 and 62, flip-flops 56 and 58. |
| integrated circuit control means responsive to said sequence detection signal for producing a corresponding control signal; | It is the function of the integrated circuit control means to respond to the sequence detection signal produced by the integrated circuit detecting means by producing a corresponding control signal. | Integrated circuits including OR gate 64, flip-flop 66. |
| wherein said detecting means comprises | | |
| first integrated circuit detecting means for producing a first detection signal in response to the reception of a first predetermined sequence of predetermined DTMF tone signals and | It is the function of the first integrated circuit detecting means to produce a first detection signal (a type of sequence detection signal) in response to the reception of a first predetermined sequence of predetermined DTMF tone signals. | Integrated circuits including DTMF decoder 20, AND gates 48, 50 and 60, flip-flop 56. |
| second integrated circuit detecting means for producing a second detection signal in response to the reception of a second predetermined sequence of predetermined DTMF tone signals; | It is the function of the second integrated circuit detecting means to produce a second detection signal (a type of sequence detection signal) in response to the reception of a second predetermined sequence of predetermined DTMF tone signals. | Integrated circuits including DTMF decoder 20, AND gates 50, 52 and 62, flip-flop 58. |
| wherein said control means is | | |

- 8 -

| | FUNCTION | CORRESPONDING STRUCTURE |
|---|---|---|
| responsive to said first detection signal for producing a corresponding first control signal and | In response to the first detection signal, it is the function of the control means to produce a corresponding first control signal. | Integrated circuits including OR gate 64, flip-flop 66. |
| responsive to said second detection signal for producing a corresponding second control signal; | In response to the second detection signal, it is the function of the control means to produce a corresponding second control signal. | Integrated circuits including OR gate 64, flip-flop 66. |
| wherein said control means comprises | | |
| integrated circuit dual state means for producing only one of said first control signal and said second control signal at a time; and | It is the function of the integrated circuit dual state means to produce only one first control signal or second control signal at any one time. | Integrated circuits including OR gate 64, flip-flop 66. |
| wherein said first and said second integrated circuit detecting means further include | | |
| integrated circuit gating means coupled in circuit for disabling production of said first and said second detection signals respectively in response to said second control signal and said first control signal, respectively, whereby said apparatus cannot produce said first detection signal and said second detection signal at the same time. | It is the function of the integrated circuit gating means to "prevent[] the production of a given sequence detection signal if the device is already in the state associated with that signal and the same tone sequence is entered a second time." *Jackson v. Casio Phonemate, Inc.*, 105 F.Supp.2d 858, 866 (N.D. Ill. 2000). | Integrated circuits including AND gates 60 and 62. |
| **CLAIM 69** | **FUNCTION** | **CORRESPONDING STRUCTURE** |
| A phone-line-linked, tone-operated control apparatus for remotely and selectively controlling a plurality of operations, said operations being bistable by having only two mutually-exclusive stable operating conditions, said apparatus comprising: | | |

- 9 -

| | | |
|---|---|---|
| integrated circuit detecting means coupled to receive a plurality of DTMF tone signals from said phone line, for detecting at least one predetermined sequence of predetermined DTMF tone signals and for producing a corresponding sequence detection signal; and | It is the function of the integrated circuit detecting means to receive a plurality (two or more) of DTMF tone signals from the phone line, to detect at least one predetermined sequence of predetermined DTMF tone signals, and to produce a sequence detection signal corresponding to the predetermined sequence of predetermined DTMF tone signals received. | Integrated circuits including DTMF decoder 20, crystal 40, inverter 47, AND gates 48, 50, 52, 60 and 62, flip-flops 56 and 58. |
| integrated circuit control means responsive to said sequence detection signal for producing a corresponding control signal; | It is the function of the integrated circuit control means to respond to the sequence detection signal produced by the integrated circuit detecting means by producing a corresponding control signal. | Integrated circuits including OR gate 64, flip-flop 66. |
| wherein said detecting means comprises | | |
| integrated circuit tone decoding means for converting each received one of said plurality of DTMF tone signals into an encoded multiple-bit digital signal, with each said encoded multiple-bit digital signal having a total number of bits substantially less than the total number of DTMF tone signals in said plurality of DTMF tone signals, | It is the function of the integrated circuit tone decoding means to convert each plurality of DTMF tone signals received into an encoded multiple-bit digital signal having a total number of bits substantially less than the total number of DTMF tone signals in the plurality of DTMF tone signals received. | DTMF decoder 20. |
| integrated circuit logic gate means coupled to receive said encoded multiple-bit digital signals and responsive to said encoded multiple-bit digital signals of predetermined logic content for producing gated output signals, and | It is the function of the integrated circuit logic gate means to receive the encoded multiple-bit digital signals from the integrated circuit tone decoding means and, in response to the predetermined logic content of such encoded multiple-bit digital signals, to produce gated output signals. | Integrated circuits including AND gates 48, 50 and 52. |

| | | |
|---|---|---|
| integrated circuit sequence detecting means coupled to said logic gate means for producing said corresponding sequence detection signal [in] response to production of said gated output signals in a predetermined sequence; and | It is the function of the integrated circuit sequence detecting means to respond to a predetermined sequence of gated output signals produced by the integrated circuit logic gate means by producing a corresponding sequence detection signal. | Integrated circuits including AND gates 60 and 62, flip-flops 56 and 58. |
| wherein said control means comprises | | |
| integrated circuit flip-flop means associated with each said bistable operation, with said flip-flop means producing first state and second state output signals for each said bistable operation, said first state output signal corresponding to one of said mutually-exclusive operating conditions, and said second state output signal corresponding to the other of said mutually-exclusive operating conditions, and wherein said flip-flop means is responsive to a sequence detection signal selectively associated with one of said conditions of fewer than all of said bistable operations and is responsive to a different sequence detection signal selectively associated with the other one of said conditions of fewer than all of said bistable operations for changing from said second state output signal to said first state output signal for said fewer than all of said bistable operations, and maintaining the state of said flip-flop means until and if and only if | As explicated in detail by Judge Gettleman in *Casio Phonemate, Inc.*, 105 F.Supp.2d at 869-70:<br><br>"According to the plain language of Claim 3, the '900 patent controls 'bistable' operations, meaning operations that have two mutually exclusive stable operating conditions only. The two mutually exclusive operating conditions of the preferred embodiment of plaintiff's patent are 'on' and 'off.' As plaintiff explained to the patent office on April 26, 1996, 'a single flip-flop means 66 selectively controls both of two, mutually exclusive, stable operating conditions (e.g., "ON" and "OFF") of a bistable operation.' The language of Claim 3 and the detailed description explain that entering a predetermined sequence of predetermined tone signals (such as the tones # and 1), produces a sequence detection signal, which itself produces a corresponding control signal (such as 'off'). As explained in the claim language, a specific and different sequence detection signal is associated with each of the two operating conditions, and part of the function of the [integrated circuit] flip-flop means is to respond to different sequence detection signals in different ways.<br><br>The claim language reveals that it is also part of the function of the [integrated circuit] flip-flop means to maintain its state and remain in one operating condition (e.g., on) until and if and only if it receives the sequence detection signal associated with the mutually exclusive operating condition (e.g., off). As plaintiff explained while prosecuting the patent: "flip-flop means 66 maintains its state until it responds to a sequence detection signal selectively associated with the other of its two mutually exclusive states. Neither the hanging up of the answering circuitry . . . nor any other signal or operation can cause flip-flop means 66 to change its state. It only changes its state when it receives a sequence detection signal[ ] selectively associated with its opposite state." | Integrated circuits including OR gate 64, flip-flop 66. |

- 11 -

| CLAIM 79 | FUNCTION | CORRESPONDING STRUCTURE |
|---|---|---|
| said flip-flop means responds to a sequence detection signal selectively associated with the other of said conditions of fewer than all of said bistable operations, said first and second state output signals comprising said control signal. | According to the plain language of the claim coupled with the detailed description, if the appliance is on, for example, it is part of the function of the [integrated circuit] flip-flop means to not turn the item off until it receives the sequence detection signal associated with the operating condition 'off.' When the [integrated circuit] flip-flop means receives this sequence detection signal, it is part of the function of the [integrated circuit] flip-flop means to produce an output signal corresponding to the operating condition 'off,' such as the control signal 'off.'  It is also part of the function of the [integrated circuit] flip-flop means to turn the item back on only if it receives a different sequence detection signal, e.g., the sequence detection signal selectively associated with the operating condition 'on.'" | |
| A phone-line-linked, tone-operated control apparatus comprising: | | |
| integrated circuit detecting means coupled to receive DTMF tone signals from said phone line, for detecting at least one predetermined sequence of predetermined DTMF tone signals and for producing a corresponding sequence detection signal; | It is the function of the integrated circuit detecting means to receive DTMF tone signals from the phone line, to detect at least one predetermined sequence of predetermined DTMF tone signals, and to produce a sequence detection signal corresponding to the predetermined sequence of predetermined DTMF tone signals received. | Integrated circuits including DTMF decoder 20, crystal 40, inverter 47, AND gates 48, 50, 52, 60 and 62, flip-flops 56 and 58. |
| integrated circuit control means responsive to said sequence detection signal for producing a corresponding control signal; | It is the function of the integrated circuit control means to respond to the sequence detection signal produced by the integrated circuit detecting means by producing a corresponding control signal. | Integrated circuits including OR gate 64, flip-flop 66. |

- 12 -

| | | |
|---|---|---|
| integrated circuit access limiting circuit means coupled with said detecting means for preventing production of said sequence detection signal until an access sequence comprising a further predetermined sequence of predetermined DTMF tone signals is first received on said phone line; | "According to the plain language of the claim, the function of the '900 patent's [integrated circuit] access limiting circuit means is to prevent a sequence detection signal from being produced until after the phone line receives a predetermined sequence of predetermined [DTMF] tone signals. In essence, it is the function of the [integrated circuit] access limiting circuit means to prevent a user from accessing a mailbox unless she first enters an access code." *Casio Phonemate, Inc.*, 105 F.Supp.2d at 874. | Break-in prevention system 25; relay 90 and integrated circuits including AND gates 55, 100, 102, 104, 108, 112, 116, 118 and 126, OR gates 85 and 120, exclusive OR gate 95, flip-flops 106, 110, 114 and 122, counters 70 and 124, buffer 88, inverter 125. |
| wherein said access limiting circuit means includes | | |
| integrated circuit gate means coupled with said detecting means for normally preventing response thereof to said DTMF tone signals, and | It is the function of the integrated circuit gate means normally to prevent the integrated circuit detecting means from producing a sequence detection signal corresponding to a received sequence of predetermined DTMF tone signals. | Integrated circuit including AND gate 55. |
| integrated circuit counter means coupled to said gate means and responsive to said DTMF tone signals for causing said gate means to enable operation of said detecting means following a predetermined number of DTMF tone signals received thereby. | "According to the plain language of the claim, the function of the [integrated circuit] counter means is to count the number of [DTMF] tone signals that are entered until the number of signals entered equals the number of digits in the access code. If the correct [DTMF] tone signals were entered, the [integrated circuit] counter means enables operation of the [integrated circuit] detecting means." *Casio Phonemate, Inc.*, 105 F.Supp.2d at 875. | Counter 124. |

- 13 -

| CLAIM 112 | FUNCTION | CORRESPONDING STRUCTURE |
|---|---|---|
| A phone-line-linked, tone-operated control apparatus comprising: | | |
| integrated circuit detecting means coupled to receive DTMF tone signals from said phone line, for detecting at least one predetermined sequence of predetermined DTMF tone signals and for producing a corresponding sequence detection signal; | It is the function of the integrated circuit detecting means to receive DTMF tone signals from the phone line, to detect at least one predetermined sequence of predetermined DTMF tone signals, and to produce a sequence detection signal corresponding to the predetermined sequence of predetermined DTMF tone signals received. | Integrated circuits including DTMF decoder 20, crystal 40, inverter 47, AND gates 48, 50, 52, 60 and 62, flip-flops 56 and 58. |
| integrated circuit control means responsive to said sequence detection signal for producing a corresponding control signal; and | It is the function of the integrated circuit control means to respond to the sequence detection signal produced by the integrated circuit detecting means by producing a corresponding control signal. | Integrated circuits including OR gate 64, flip-flop 66. |
| integrated circuit access limiting circuit means coupled with said detecting means for preventing production of said sequence detection signal until an access sequence comprising a further predetermined sequence of predetermined DTMF tone signals is first received on said phone line; | "According to the plain language of the claim, the function of the '900 patent's [integrated circuit] access limiting circuit means is to prevent a sequence detection signal from being produced until after the phone line receives a predetermined sequence of predetermined [DTMF] tone signals. In essence, it is the function of the [integrated circuit] access limiting circuit means to prevent a user from accessing a mailbox unless she first enters an access code." *Casio Phonemate, Inc.*, 105 F.Supp.2d at 874. | Break-in prevention system 25; relay 90 and integrated circuits including AND gates 55, 100, 102, 104, 108, 112, 116, 118 and 126, OR gates 85 and 120, exclusive OR gate 95, flip-flops 106, 110, 114 and 122, counters 70 and 124, buffer 88, inverter 125. |
| wherein said access limiting circuit means comprises | | |

- 14 -

| | | |
|---|---|---|
| integrated circuit gating circuit means for producing a gate signal in response to DTMF tone signals making up said access sequence, | It is the function of the integrated circuit gating circuit means to produce a gate signal in response to a correctly-entered access sequence. | Integrated circuits including AND gates 100, 102, 104, 108, 112, 116, 118 and 126, flip-flops 106, 110 and 114, OR gate 120. |
| integrated circuit counter means for producing a count signal upon counting a predetermined number of received DTMF tone signals greater in number than the number of DTMF tone signals in said access sequence, and | It is the function of the integrated circuit counter means to produce a count signal upon counting a predetermined number of received DTMF tone signals greater in number than the number of DTMF tone signals in the access sequence. | Counter 124. |
| integrated circuit disabling circuit means responsive to said count signal and said gate signal for disabling production of said sequence detection signal when said access sequence is not present in said predetermined number of received DTMF tone signal[s]; | It is the function of the integrated circuit disabling circuit means to disable production of a sequence detection signal if the access sequence is not present in the predetermined number of DTMF tone signals counted by the integrated circuit counter means. | Flip-flop 122. |
| whereby a selected number of additional, arbitrary DTMF tone signals may be received in addition to the signals of said access sequence without disabling production of said sequence detecting signal, said selected number of additional signals and the number of signals in said access sequence together equalling the number of signals counted by said counter means. | | |

- 15 -