# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 0256 | **DATE** | March 19, 2003 |
| **CASE TITLE** | Glenayre Electronics, Inc. v. Jackson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Supplemental Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ Plaintiff's Supplemental Motion for Summary Judgment [83-1] is **DENIED**.
(11) ■ For further detail see order on the reverse side of the original minute order.

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 20 2003 | 105 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT | |
| | Mail AO 450 form. | CLERK | docketing deputy initials |
| | Copy to judge/magistrate judge. | 03 MAR 20 AM 8:02 | |
| | | FILED-GT | date mailed notice |
| CEL | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

## ORDER

On February 18, 2003, the Court granted Glenayre's Motion for Summary Judgment with respect to Claims 1, 3, 15, 59, 69 and 112 of U.S. Patent No. 4,596,900 held by Jackson. Presently before the Court is Glenayre's Supplemental Motion for Summary Judgment on the only remaining Claims at issue, 5 and 79. For the following reasons, the motion is denied.

The Court has previously held that "the function of the '900 patent's access limiting circuit means is to prevent a sequence detection signal from being produced until after the phone line receives a predetermined sequence of predetermined tone signals. In essence, it is the function of the access limiting circuit means to prevent a user from accessing a mailbox unless she first enters an access code." Claims Construction Order, Chart at 5 (internal quotation marks omitted). As in its initial Motion for Summary Judgment, Glenayre claims in the instant motion that Jackson has failed to create a genuine issue as to whether the structural components within the MVP (including any algorithm(s) used by its microprocessor(s)) are programmed to perform the function of the "access limiting circuit means" in substantially the same way as the corresponding individual digital logic circuit elements described in the '900 patent. Put more precisely, Glenayre claims that no reasonable jury could conclude that the MVP's string-compare password validation technique is insubstantially different than the '900 patent's one-digit-at-a-time password validation technique.

Glenayre's new arguments on this point are one and all addressed to the myriad operational advantages that the MVP offers over the preferred embodiment of the '900 patent. For example, Glenayre highlights the flexibility, customizability and security of the microprocessor-driven MVP's overall password scheme. While these asserted advantages may well make the MVP more desirable than the preferred embodiment of the '900 Patent, none of them specifically relate to the differences vel non between the competing structures which perform the claimed function of the "access limiting circuit means" – "prevent[ing] a user from accessing a mailbox unless she first enters an access code." The highlighted advantages are more in the manner of password "housekeeping" features than compelling structural differences that would justify summary judgment. Cf. Caterpillar Inc. v. Deere & Co., 224 F.3d 1374, 1380 (Fed. Cir. 2000) ("The district court additionally noted that the absence of a front axle which could obstruct the operator's view of the ground resulted in improved operator visibility, which improperly considered potential advantages offered by the accused structure that do not relate to the disputed tensioning function."); Amstar Corp. v. Envirotech Corp., 730 F.2d 1476, 1482 (Fed. Cir. 1984) ("An accused device cannot escape infringement by merely adding features . . . ." (internal quotation marks omitted)). While there are certainly literal operational differences between the MVP's string-compare password validation technique and the '900 patent's one-digit-at-a-time password validation technique, the Court is unable to conclude from the evidence made available (particularly the declarations of Dr. Leroy Silva and Thomas A. Gafford) that no reasonable jury could find structural equivalence between these two methods.

In its supplemental motion, Glenayre also raises the specter of "prior art," arguing that pre-existing U.S. Patent No. 4,371,752 necessarily limits the scope of permissible equivalents under the '900 patent. As Glenayre sees it, if Claims 5 and 79 of the '900 patent could hypothetically read on the MVP, then those claims would also encompass the '752 patent, thereby ensnaring the "prior art." As noted in the Court's February 18, 2003 Memorandum Opinion and Order, "Glenayre's complaint seeks a broad declaratory judgment of non-infringement" both literally and under the doctrine of equivalents. In the case at bar, a "prior art" defense is only apposite in the context of the doctrine of equivalents; it is nugatory in the context of literal infringement. Tate Access Floors, Inc. v. Interface Architectural Res., Inc., 279 F.3d 1357, 1365, 1367 (Fed. Cir. 2002) ("[T]here is no 'practicing the prior art' defense to literal infringement. . . . Prior art is relevant to literal infringement only to the extent that it affects the construction of ambiguous claims.") Claims 5 and 79 are not ambiguous. To the extent that "prior art" is raised in connection with the analysis of infringement under the doctrine of equivalents, Glenayre bore the burden of affirmatively pleading this defense, Fiskars, Inc. v. Hunt Mfg. Co., 221 F.3d 1318, 1323 (Fed. Cir. 2000) ("The patentee is not required to negate an affirmative defense that has not been pled and supported with evidence."); cf. 35 U.S.C. § 282, which it failed to do.

Even overlooking Glenayre's pleading failure, however, its "prior art" argument is unconvincing. While it is certainly true that "the doctrine of equivalents cannot extend so broadly as to ensnare prior art," Tate Access Floors, Inc., 279 F.3d at 1367, Glenayre has, at best, made a limited case that the "access limiting circuit means" of Claims 5 and 79 is contained within the '752 patent. Glenayre leaves entirely unaddressed, however, the crucial question whether the other means essential to Claims 5 and 79 (i.e., the "detecting means," the "control means," the "counter means" and the "gate means") are also disclosed by the '752 patent, a matter on which Glenayre would bear the burden of proof by clear and convincing evidence. Id. Even beyond this, the evidence submitted by Jackson suggests real differences between the '900 patent and the '752 patent and militates strongly against granting Glenayre summary judgment on this point. (See, e.g., Silva Second Decl. ¶¶ 24-27.)

Glenayre's Supplemental Motion for Summary Judgment is **DENIED**.