RECEIVED

MAR 3 1 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GLENAYRE ELECTRONICS, INC., )
a Colorado corporation, )
 )
 )
Plaintiff, )    Civil Action No. 02 C 0256
 )
 )
v. )    Honorable Harry D. Leinenweber
 )    Magistrate-Judge Ian H. Levin
PHILIP JACKSON, an individual, )
 )
 )
Defendant. )
PHILIP JACKSON, an individual, and )
PMJ FAMILY LIMITED PARTNERSHIP,)
 )
Counterclaim-Plaintiffs, )
 )
 )
v. )
 )
GLENAYRE ELECTRONICS, INC., )
 )
Counterclaim-Defendant. )

DOCKETED
APR 0 4 2003

FILED

MAR 3 1 2003

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

**CORRECTED JURY INSTRUCTIONS FROM
MARCH 26, 2003 INSTRUCTION CONFERENCE**

These instructions reflect Mr. Jackson's notes of the March 26, 2003 Jury
Instruction Conference in chambers.

139

## TABLE OF CONTENTS

**NO.**                     **DESCRIPTION**

1    Nature of the Action and Contentions of the Parties . . . . . . . . . . . . . . . . . . . . . . 1

2    Province of the Court and Jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

3    Questions, Comments and Rulings of the Court . . . . . . . . . . . . . . . . . . . . . . . 4

4    Types of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5    Duty to Object . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

6    Deposition Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7    Credibility of Witnesses and Weight of the Evidence . . . . . . . . . . . . . . . . . . . . 9

8    Opinion Evidence, Expert Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

9    Parts Of A Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

10   Burden Of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11   Claim Construction and Infringement -- Generally . . . . . . . . . . . . . . . . . . . . 14

12   Infringement Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

13   Direct Infringement - Knowledge or Intent Unnecessary . . . . . . . . . . . . . . . . 16

14   Determining Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

15   Means Plus Function Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

16   Equivalence of Structures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

17   Hardware and Software . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18   Advantages or Additional Functions of the Accused Device . . . . . . . . . . . . . . 22

19   Patent Infringement Damages -- General . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

i

20    Patent Infringement Damages -- Reasonable Royalty . . . . . . . . . . . . . . . . . . 24

21    Factors Used For Determining A Reasonable Royalty . . . . . . . . . . . . . . . . . 25

22    Reasonable Royalty - Time of Determination . . . . . . . . . . . . . . . . . . . . . . 27

23    Reasonable Royalty -  Lump Sum . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

24    Date Damages Begin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

25    Deliberations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## INSTRUCTIONS AT THE CLOSE OF EVIDENCE

## INSTRUCTION NO. 1

### Nature of the Action and Contentions of the Parties

You're getting a copy of my instructions and the verdict form. You can follow along as I read, and I think it will help you understand the instructions.

As I told you at the outset of the case, this is a civil case. It involves United States patent rights to Mr. Jackson relating to a phone-line-linked, tone-operated control device. You must decide whether Mr. Jackson has proved by a preponderance of the evidence that Glenayre has infringed Claims 5 or 79 of United States Patent No. 4,596,900 entitled phone-line-linked, tone-operated control device.

To infringe a patent means to make, use, sell, offer to sell, or import a product that is claimed in that patent without the permission of the patent's owner. In order to prove infringement, Mr. Jackson must show that each and every element of the patent claims at issue are in the alleged infringing device. Glenayre contends that it does not infringe the '900 patent.

Glenayre maintains that the MVP does not perform the functions required by the claim element and that its equipment is substantially different from the Jackson patent.

In addition, if you find infringement of the '900 patent, you will be asked to decide the amount of damages to which Mr. Jackson is entitled and has proven. The disputed issues for your determination may be summarized as follows:

1.   Has Mr. Jackson proved that Glenayre infringed his patent?

2.   If Glenayre is liable for infringement, what amount of damages have been

1

proved adequate to compensate for the infringement?

2

## INSTRUCTION NO. 2

### Province of the Court and Jury

Ladies and gentlemen, I am now going to give you instructions. Now that you've heard the evidence and arguments of counsel, it becomes my duty to give you instructions as to the law applicable to this case.

It is your duty as jurors to follow the law as stated by the Court and to apply these rules of law to the facts as you find them from the evidence in the case. You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by the Court regardless of any opinion you may have as to what you think the law ought to be. It would be a violation of your sworn duty as jurors if you ignore the law as I give it to you and apply some other law. It would also be a violation of your sworn duty as jurors of the facts to base a verdict upon anything but the evidence in the case.

Serving on a jury is, with voting, one of the most important responsibilities of citizens in our system of government. Our system of adjudication depends upon the jury to find facts, and justice through trial by jury must always depend upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all jurors and arrive at a verdict by applying the same rules of law given by the Court.

You have been chosen as jurors and you took an oath that you would try the issues that have been raised by the pleadings and the evidence, and the public expects you to do your duty without bias or prejudice and to render justice in the case between the litigants.

3

**INSTRUCTION NO. 3**

**Questions, Comments and Rulings of the Court**

Counsel have quite properly referred to some of the governing rules of law in their argument. If, however, any difference appears to you between the law stated by counsel and that stated by the Court in these instructions, you are, of course, to be governed by the Court's instructions.

During the course of trial, I may have occasionally asked questions of a witness in order to bring out facts not fully covered in the testimony. Do not assume that I hold any opinion on the matters to which my question may have related. Nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of the case or what that opinion is. It is not my function to determine the facts, but it is yours.

4

**INSTRUCTION NO. 4**

**Types of Evidence**

As I told you at the outset, there are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts of the case. One is direct evidence, such as the testimony of an eyewitness, and the other is indirect or circumstantial evidence, proof of a chain of circumstances pointing to the existence or nonexistence of certain facts. And as a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with all the evidence in the case, both direct and circumstantial.

Statements and arguments of counsel and information contained in unanswered questions are not evidence in the case. When, however, the attorneys on both sides stipulate and agree as to the existence of a fact, the jury must, unless otherwise instructed, accept the stipulation and regard the fact as proven.

Unless you are otherwise instructed, the evidence in the case always will consist of the sworn testimony of the witnesses regardless of who may have called them, all exhibits received into evidence regardless of who may have produced them, and all facts which may have been admitted or stipulated.

You are to consider only the evidence in the case, but in your consideration of the evidence, you are not limited to the bald statements of the witnesses. In other words, you are not limited to what you see and hear as the witnesses testify. You are permitted to draw from the facts that you find have been proved such reasonable inferences that seem justified in the light of your experience. Inferences are deductions and conclusions which reason and

5

common sense lead the jury to draw from facts which have been established by evidence in the case.

**INSTRUCTION NO. 5**

**Duty to Object**

It is the duty of the attorneys on each side to object when the other side offers testimony and evidence which the attorney believes is not properly admissible. You should not show prejudice against an attorney or his client because the attorney has made objections.

By allowing the testimony or other evidence to be introduced over the objections of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence. On the other hand, where the Court sustains an objection to a question addressed to a witness, the jurors must disregard the statement entirely. You may draw no inference from the wording of it or speculate as to what the witness would have said had he or she been permitted to answer the question.

7

## INSTRUCTION NO. 6

### Deposition Testimony

During the trial, certain testimony was read to you by way of deposition or shown to you by videotape, consisting of recorded answers under oath to questions asked of witnesses in advance of trial by one or more of the attorneys for the parties. The testimony of a witness who for some reason was not present to testify from the witness stand may be presented in writing under oath in the form of a deposition.

Such testimony is entitled, to the same consideration and is to be judged as to credibility and weight and otherwise considered by you as far as possible in the same way as if the witness had been present and testified from the witness stand.

8

**INSTRUCTION NO. 7**

**Credibility of Witnesses and Weight of the Evidence**

With respect to all forms of evidence properly considered by you, you, the jurors, are the sole judges of the credibility of the witnesses and of the weight and effect their testimony deserves. You are the sole judges of the credibility of the witnesses.

You may be guided by the appearance and conduct of the witness or by the manner in which the witness testifies or by the character of the testimony given or by evidence to the contrary of the testimony given. You should carefully scrutinize all of the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief.

Consider each witness's intelligence, motive, and state of mind and demeanor or manner while on the stand, and whether he or she impresses you as having an accurate recollection of the matters. Consider also any relation each witness may bear to either side of the case, the manner in which each witness may be affected by the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies and discrepancies in the testimony of a witnesses or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently, and innocent misrecollection, like failure of recollection, is not an uncommon experience.

In weighing the effect of the discrepancy, always consider whether it pertains to a matter of importance or to an unimportant detail and whether the discrepancy results from innocent error or intentional falsehood. After making your own judgment, you will give the

9

testimony of each witness the weight you may think it deserves and, in short, you may accept or reject the testimony of any witness in whole or in part.

The weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or nonexistence of any fact. You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

A witness may be discredited or impeached by contrary evidence or by evidence that at some other time the witness has said or done something or has failed to do something that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves. If a witness is shown to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars, and you may reject all of the testimony of the witness or give it such credibility as you may think it deserves.

10

## INSTRUCTION NO. 8

**Opinion Evidence, Expert Witnesses**

You have heard testimony from persons who, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case.

**INSTRUCTION NO. 9**

**Parts Of A Patent**

To obtain a patent, an inventor must first file an application in the United States Patent and Trademark Office describing what he or she believes is the invention. A patent examiner then examines the application to determine, based upon the information before the examiner, whether the inventor is entitled to a patent under the law. The written record of this process is called the prosecution history of the patent.

A United States patent has a specification and numbered claims. A United States patent is a printed document which describes the invention. The patent has a specification, which is a written description containing some examples of embodiments of the invention, and numbered claims which define the invention itself.

12

## INSTRUCTION NO. 10

**Burden Of Proof**

Mr. Jackson has the burden of proving both patent infringement and the amount of damages, if any, by a standard called preponderance of the evidence.

Proof by a preponderance of the evidence means that evidence must be produced that leads you to believe that the matter for which it bears the burden is more likely true than not. To put it differently, if you were to put the evidence on opposite sides of a scale, you must decide whether each side's evidence would make the scale tip slightly towards its side.

## INSTRUCTION NO. 11

### Claim Construction and Infringement -- Generally

Mr. Jackson has accused Glenayre of infringing the '900 patent. Mr. Jackson has the burden of proving infringement by a preponderance of the evidence.

Before you decide whether or not Glenayre has infringed claims 5 or 79 of the '900 patent, you will have to understand the patent "claims." The patent claims are numbered paragraphs at the end of the patent. The patent claims involved here are claims 5 and 79 of the patent which is an exhibit in evidence. The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. Only the claims of the patent can be infringed.

Neither the written description, which we have already discussed, nor the drawings of a patent can be infringed. Each of the claims must be considered individually, and not all claims of a patent have to be infringed for the patent to be infringed. To prove patent infringement, Mr. Jackson need only establish by a preponderance of the evidence that one claim is infringed.

You have heard evidence about both Glenayre's commercial MVP product and Mr. Jackson's prototype. However, in deciding the issue of infringement you may not compare Glenayre's accused MVP product to Mr. Jackson's prototype. Rather, you must compare Glenayre's accused MVP product with claims 5 and 79 of the '900 patent when making your decision regarding infringement.

14

**INSTRUCTION NO. 12**

**Infringement Generally**

The patent law gives the owner of a valid patent the right to exclude others from making, using, offering for sale, importing or selling the patented invention during the term of the patent. The patent law provides that any person or business entity which, without the patent owner's permission, makes, uses, offers for sale or sells within the United States, or imports into the United States, any product or method that is covered by at least one claim of a patent before the patent expires, infringes the patent. Here, Mr. Jackson alleges that Glenayre's MVP product infringes claims 5 and 79 of Mr. Jackson's U.S. Patent No. 4,596,900.

**INSTRUCTION NO. 13**

**Direct Infringement - Knowledge or Intent Unnecessary**

In this case, Mr. Jackson asserts that Glenayre has directly infringed the patent. Glenayre would be liable for directly infringing Mr. Jackson's patent if you find that Mr. Jackson has proven by a preponderance of the evidence that Glenayre has made, used, offered for sale, imported or sold the invention defined in at least one claim of Mr. Jackson's patent. A person can directly infringe a patent without knowing that what it is doing is an infringement of the patent. It may also infringe even though in good faith it believes that what it is doing is not an infringement of any patent.

16

**INSTRUCTION NO. 14**

**Determining Infringement**

To determine infringement, you must compare the alleged infringing MVP product with each claim that Mr. Jackson asserts is infringed, using my instructions as to the meaning of the patent claim. A patent claim is infringed only if the alleged infringing MVP product includes each and every element in that patent claim. If the alleged infringing MVP product does not contain one or more elements recited in a claim, Glenayre does not infringe that claim.

You must determine infringement with respect to claims 5 and 79 individually. You must be certain to compare the alleged infringing MVP product with each of those claims. The MVP product should be compared to the inventions in the patent claims as will be defined later, not to Mr. Jackson's prototype.

17

**INSTRUCTION NO. 15**

**Means Plus Function Claims**

To decide the questions of infringement, you must first understand what the claims of the patent cover, that is, what they prevent anyone else from doing.

I will now tell you the meanings of the following words and groups of words from the patent claims. You must use these meanings in your deliberations concerning infringement.

Claims 5 and 79 of the '900 patent are made up of clauses written in a special form called "means-plus-function" clauses. These clauses require a special interpretation under the patent law. The law says that the words of those clauses shall not cover all means which perform the recited functions, but shall cover only the structure described in the patent specification and drawings that performs the recited function, or an equivalent of that structure.

The functions performed by the means-plus-function clauses in claims 5 and 79 of the '900 patent, together with the structures disclosed in the '900 patent that perform those functions, are set forth in the exhibit which accompanies these instructions.

To determine whether Mr. Jackson has proven infringement of those claims, you must first determine whether or not he has shown that any structures in the alleged infringing MVP product performs the identical functions that I just stated. If you find that they do, you must then determine whether or not Mr. Jackson has shown that those structures are identical to any structures disclosed in the ?900 patent specification for performing those stated functions. If you find that they are identical, then those means-plus-function clauses of the '900 patent are found in the allegedly infringing MVP product.

18

If you find that the structure of the alleged infringing voice mail system is not identical to a structure that performs the stated function in the '900 patent specification, then you must consider whether or not the voice mail system has a structure that is equivalent to any structure described in the patent specification for performing that function.

To show infringement, it is Mr. Jackson's burden to prove by a preponderance of the evidence that the parts of the MVP product that perform the stated functions are identical to or equivalent to the structure described in the specification of the '900 patent for performing the stated functions.

**INSTRUCTION NO. 16**

**Equivalence of Structures**

Infringement of a means-plus-function clause requires that the relevant structure in the accused MVP product must perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the application. Functional identity and either structural identity or equivalence are both necessary. The accused MVP product must (1) perform the identical function recited in the means clause and (2) perform that function using the structure disclosed in the specification or an equivalent structure.

Equivalence of structure turns on whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial. Put another way, there is equivalence of structure if the assertedly equivalent structure in the accused MVP product performs the claimed function in substantially the same way to achieve substantially the same result as the corresponding structure described in the specification.

20

**INSTRUCTION NO. 17**

**Hardware and Software**

Hardware and software implementations of a component of an invention may be interchangeable substitutes. The question is whether a skilled artisan would contemplate the interchange merely as a design choice.

**INSTRUCTION NO. 18**

**Advantages or Additional Functions of the Accused Device**

In considering any asserted advantages or differences between structures in the MVP device and structures required by the claims of the '900 patent, you are instructed to ignore any asserted advantages of the accused structures that do not relate to the claimed function. That an accused structure may perform an additional, unclaimed function does not negate equivalence of structure.

**INSTRUCTION NO. 19**

**Patent Infringement Damages – General**

If you find that the MVP product infringes at least one of the claims of the '900 patent, you must determine the amount of damages to be awarded Mr. Jackson for the infringement in the form of reasonable royalties. The amount of the royalty must be adequate to compensate Mr. Jackson for the infringement. A reasonable royalty should put Mr. Jackson in approximately the financial position he would have been had the infringement not occurred.

I will now explain how you should determine an appropriate damage award

23

## INSTRUCTION NO. 20

**Patent Infringement Damages -- Reasonable Royalty**

Mr. Jackson has the burden of proving his damages by a preponderance of the evidence. The patent law specifically provides that the amount of damages that Glenayre must pay Mr. Jackson for infringing the '900 patent is a reasonable royalty for the use that Glenayre made of the invention set forth in the '900 patent.

A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention. A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between Mr. Jackson and a person or company in the position of Glenayre taking place at the time that the infringement began. You should also assume that both parties to the negotiation understood the patent to be valid and infringed and that the licensee would respect the patent.

24

**INSTRUCTION NO. 21**

**Factors Used For Determining A Reasonable Royalty**

In determining the value of a reasonable royalty, you may consider evidence concerning profits made from the use of the patented invention, as well as evidence on any of the following factors:

1. Any royalties received by Mr. Jackson for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by Glenayre to license other patents comparable to the '900 patent.

3. Mr. Jackson's established policy and marketing program to maintain his right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

4. The commercial relationship between Mr. Jackson and Glenayre, such as whether or not they are competitors in the same territory in the same line of business.

5. The effect of selling the patented product in promoting sales of other products of Glenayre;

6. The duration of the '900 patent.

7. The commercial success of the product as represented by its sales, its profitability and its current popularity.

8. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

9. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by Mr. Jackson; and the benefits to those who have used the invention.

10. The extent to which Glenayre has made use of the invention; and any evidence that shows the value of that use.

11. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the

use of the invention or analogous inventions.

12. The portion of the profit that arises from the patented invention itself as opposed to profit arising from features unrelated to the patented invention, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

26

**INSTRUCTION NO. 22**

**Reasonable Royalty - Time of Determination**

Although the relevant date for the hypothetical reasonable royalty negotiation is the date that the alleged infringement began, you may consider in your determination of the reasonable royalty damages any actual profits by Glenayre after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time. You may only consider this information, however, if it was foreseeable at the time that the infringement began.

27

**INSTRUCTION NO. 23**

**Reasonable Royalty - Lump Sum**

A reasonably royalty may be calculated as a lump-sum paid-up license based on projected royalties as of the date the infringement began.

**INSTRUCTION NO. 24**

**Date Damages Begin**

The date that Mr. Jackson first gave notice to Glenayre of its claim of patent infringement is the date at which patent damages begin to be calculated. The Court has ruled that date is December 19, 2001.

29

## INSTRUCTION NO. 25

### Deliberations

You must not base your verdict in any way upon sympathy, bias, guesswork, or speculation. Your verdict must be based solely on the evidence and the instructions of the Court. Your verdict must represent the considered judgment of each juror. When you return a verdict, it is necessary that each juror agree. Your verdict must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to your individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.

In the course of your deliberations, do not hesitate to examine your own views and to change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Remember at all times that you are not partisans. You are judges, judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Upon retiring to the jury room, you will select one of your number to act as your foreman. The foreman will preside over your deliberations and will be your spokesman here in court.

Forms of verdict have been prepared for your convenience. You will take these forms to the jury room, and when you have reached unanimous agreement as to your verdict, you will have your foreman fill in, date, and sign the form which sets forth the verdict upon which you unanimously agree, and then return your verdict to the courtroom.

30

It is proper to add the caution that nothing said in these instructions and nothing in any form of verdict prepared for your convenience is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

If it becomes necessary during your deliberations to communicate with the Court, you may send a note by the court security officer signed by your foreman or by one or more of the members of the jury. No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing, and the Court will never communicate with any member of the jury for any subject touching the merits of the case otherwise than in writing or orally here in open court.

You will note from the oath about to be taken by the court security officer that he, too, as well as other persons are forbidden to communicate in any way or manner with any member of the jury for any subject touching the merits of the case. Bear in mind also that you are never to reveal to any person, not even to the Court, how the jury stands numerically or otherwise on the questions before you until after you have reached a unanimous verdict.

**EXHIBIT A**

| CLAIM 5 | FUNCTION | CORRESPONDING STRUCTURE |
|---|---|---|
| A phone-line-linked, tone-operated control apparatus comprising: | | |
| detecting means coupled to receive tone signals from said phone line, for detecting at least one predetermined sequence of predetermined tone signals and for producing a corresponding sequence detection signal; | It is the function of the detecting means to receive tone signals from the phone line, to detect at least one predetermined sequence of predetermined tone signals, and to produce a sequence detection signal corresponding to the predetermined sequence of predetermined tone signals received. | Integrated circuits including DTMF decoder 20, crystal 40, inverter 47, AND gates 48, 50, 52, 60 and 62, flip-flops 56 and 58. |
| control means responsive to said sequence detection signal for producing a corresponding control signal; | It is the function of the control means to respond to the sequence detection signal produced by the detecting means by producing a corresponding control signal. | Integrated circuits including OR gate 64, flip-flop 66. |
| access limiting circuit means coupled with said detecting means for preventing production of said sequence detection signal until an access sequence comprising a further predetermined sequence of predetermined tone signals is first received on said phone line; | According to the plain language of the claim, the function of the '900 patent's access limiting circuit means is to prevent a sequence detection signal from being produced until after the phone line receives a predetermined sequence of predetermined tone signals. In essence, it is the function of the access limiting circuit means to prevent a user from accessing a mailbox unless she first enters an access code. | Break-in prevention system 25; relay 90 and integrated circuits including AND gates 55, 100,102, 104, 108, 112, 116, 118 and 126, OR gates 85 and 120, exclusive OR gate 95, flip-flops 106, 110, 114 and 122, counters 70 and 124, buffer 88, inverter 125. |
| wherein said access limiting circuit means includes | | |
| gate means coupled with said detecting means for normally preventing response thereof to said tone signals, and | It is the function of the gate means normally to prevent the detecting means from producing a sequence detection signal corresponding to a received sequence of predetermined tone signals. | Integrated circuit including AND gate 55. |

| CLAIM 5 | FUNCTION | CORRESPONDING STRUCTURE |
|---|---|---|
| counter means coupled to said gate means and responsive to said tone signals for causing said gate means to enable operation of said detecting means following a predetermined number of tone signals received thereby. | According to the plain language of the claim, the function of the counter means is to count the number of tone signals that are entered until the number of signals entered equals the number of digits in the access code. If the correct one signals were entered, the counter means enables operation of the detecting means. | Counter 124. |
| **CLAIM 79** | **FUNCTION** | **CORRESPONDING STRUCTURE** |
| A phone-line-linked, tone-operated control apparatus comprising: | | |
| integrated circuit detecting means coupled to receive DTMF tone signals from said phone line, for detecting at least on predetermined sequence of predetermined DTMF tone signals and for producing a corresponding sequence detection signal; | it is the function of the integrated circuit detecting means to receive DTMF tone signals from the phone line, to detect at least one predetermined sequence of predetermined DTMF tone signals, and to produce a sequence detection signal corresponding to the predetermined sequence of predetermined DTMF tone signals received. | Integrated circuits including DTMF decoder 20, crystal 40, inverter 47, AND gates 48, 50, 52, 60 and 62, flip-flops 56 and 58. |
| integrated circuit control means responsive to said sequence detection signal for producing a corresponding control signal; | It is the function of the integrated circuit control means to respond to the sequence detection signal produced by the integrated circuit detecting means by producing a corresponding control signal. | Integrated circuits including OR gate 64, flip-flop 66. |
| integrated circuit access limiting circuit means coupled with said detecting means for preventing production of said sequence detection signal until an access sequence comprising a further predetermined sequence of predetermined DTMF tone signals is first received on said phone line; | According to the plain language of the claim, the function of the '900 patent's [integrated circuit] access limiting circuit means is to prevent a sequence detection signal from being produced until after the phone line receives a predetermined sequence of predetermined [DTMF] tone signals. In essence, it is the function of the [integrated circuit] access limiting circuit means to prevent a user from accessing a mailbox unless she first enters an access code. | Break-in prevent system 25; relay 90 and integrated circuits including AND gates 55, 100, 102, 104, 108, 112, 116, 118 and 126, OR gates 85 and 120, exclusive OR gate 95, flip-flops 106, 110, 114 and 122, counters 70 and 124, buffer 88, inverter 125. |
| wherein said access limiting circuit means includes | | |

| CLAIM 5 | FUNCTION | CORRESPONDING STRUCTURE |
|---|---|---|
| integrated circuit gate means coupled with said detecting means for normally preventing response thereof to said DTMF tone signals, and | It is the function of the integrated circuit gate means normally to prevent the integrated circuit detecting means from producing a sequence detection signal corresponding to a received sequence of predetermined DTMF tone signals. | Integrated circuit including AND gate 55. |
| integrated circuit counter means coupled to said gate means and responsive to said DTMF tone signals for causing said gate means to enable operation of said detecting means following a predetermined number of DTMF tone signals received thereby. | According to the plain language of the claim, the function of the [integrated circuit] counter means is to count the number of [DTMF] tone signals that are entered until the number of signals entered equals the number of digits in the access code. If the correct [DTMF] tone signals that are entered until the number of signals entered equals the number of digits in the access code. If the correct [DTMF] tone signals were entered, the [integrated circuit] counter means enables operation of the [integrated circuit] detecting means. | Counter 124. |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that two copies each of the foregoing **CORRECTED**

**JURY INSTRUCTIONS FROM MARCH 26, 2003 INSTRUCTION CONFERENCE** was

served upon the below-listed counsel by hand delivery:

c/o and

Philip P. Mann
Gregory F. Wesner
Thomas M. Donahue, Jr.
Jeffrey Cole
Andrew Staes
Cole & Staes, Ltd.
321 S. Plymouth Court, Suite 1150
Chicago, IL 60604
(312) 697-0200
*Attorneys for Glenayre Electronics, Inc.*

on this ___ day of March, 2003.