UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

APR 3 0 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| GLENAYRE ELECTRONICS, INC., a Colorado corporation, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 02 C 0256 |
| v. | ) ) ) | Honorable Harry D. Leinenweber Magistrate-Judge Ian H. Levin |
| PHILIP JACKSON, an individual, | ) ) | |
| Defendant. | ) | |
| PHILIP JACKSON, an individual, and PMJ FAMILY LIMITED PARTNERSHIP, | ) ) ) | |
| Counterclaim-Plaintiffs, | ) ) | |
| v. | ) ) | |
| GLENAYRE ELECTRONICS, INC. and PRIMECO PERSONAL COMMUNICATIONS, L.P. | ) ) ) ) | |
| Counterclaim-Defendants. | ) ) | |

**DOCKETED**

MAY 0 2 2003

## NOTICE OF FILING

PLEASE TAKE NOTICE that on April 30, 2003, we caused to be filed in the United States District Court for the Northern District of Illinois, Eastern Division, **JACKSON'S REPLY IN SUPPORT OF HIS MOTION TO AMEND JUDGMENT TO ADD PREJUDGMENT INTEREST**, a copy of which is attached hereto and herewith served upon you.

Respectfully submitted,

Raymond P. Niro
Robert P. Greenspoon
William W. Flachsbart
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733
Attorneys for Philip Jackson and PMJ Family
Limited Partnership

156

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

APR 30 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| GLENAYRE ELECTRONICS, INC.,<br>a Colorado corporation, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 02 C 0256 |
| | ) | |
| v. | ) | Honorable Harry D. Leinenweber |
| | ) | Magistrate-Judge Ian H. Levin |
| PHILIP JACKSON, an individual, | ) | |
| | ) | |
| Defendant. | ) | |
| PHILIP JACKSON, an individual, and | ) | |
| PMJ FAMILY LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Counterclaim-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GLENAYRE ELECTRONICS, INC., | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |

DOCKETED

MAY 0 2 2003

## JACKSON'S REPLY IN SUPPORT OF HIS MOTION
## TO AMEND JUDGMENT TO ADD PREJUDGMENT INTEREST

### I.    INTRODUCTION

Glenayre agrees that prejudgment interest is appropriate, but claims the amount must be

calculated assuming: (i) the much lower three-month Treasury Bill rate (not prime) and (ii) that

the jury award contemplated quarterly payments, not a lump-sum award. This latter assumption

directly contradicts the arguments Glenayre makes in its post-trial JMOL brief -- namely that the

jury awarded "a lump-sum royalty of $12 million" (Br. at 5) and that a proper award would be

a "lump sum royalty of $450,000 for a paid in full license for Glenayre and its customers" (Br.

at 7). No basis exists for the quarterly payment assumption which underlies Glenayre's alternative

interest calculation. And the "Treasury Bill rate versus prime" argument has been resolved by

156

the Seventh Circuit in <u>Gorenstein Enterprises, Inc.</u> v. <u>Quality Care USA, Inc.</u>, 874 F.2d 431, 436

(7th Cir. 1989) (Posner, C.J.), holding that *prime*, not Treasury Bill rates, are the appropriate

measure for an award of prejudgment interest. As Mr. Jackson requested in his motion, the

judgment should be amended to add $728,582.00 in prejudgment interest, for a total of

$12,728,582.00.

## II. GLENAYRE'S CALCULATIONS CONTRADICT ITS OWN ADMISSIONS AND VIOLATE CONTROLLING PRECEDENT

Glenayre submits calculations of prejudgment interest based upon its speculation that the

"reasonable royalty" was meant by the jury to be spread out over the entire time period of

infringement, and reflecting ludicrously low interest rates and the use of quarterly rather than

monthly compounding. None of these arguments is supported by the trial evidence or the law.

### A. Glenayre Admitted The Damage Award Was A Lump Sum

Glenayre's assertion that the jury meant the "reasonable royalty" to be spread out in a

series of partial payments over the entire damages period is contrary to Glenayre's own

admissions in its post-trial motion JMOL, where it argues not for a series of royalty payments

throughout the damages period, but rather for "a *lump-sum* payment of $450,000 to Jackson" in

return for a "paid in full license" (Glenayre's JMOL brief, p. 1, emphasis added; see also, <u>id.</u> pp.

7-8). Glenayre's request for a remittitur is focused entirely on lump sum payments; it even argues

that "Jackson's custom is to take a lump-sum license" and "the only Glenayre licenses in evidence

were also resolved on a lump-sum basis" (Glenayre's JMOL brief, p. 8). Glenayre's disingenuous

attempt to disavow its own recognition that the jury made a lump-sum award should be rejected

out of hand.

2

Glenayre's argument also contradicts the jury instructions. The jury was told, in an agreed instruction, that "[a] reasonable royalty *may be calculated as a lump-sum, paid-up license* based on projected royalties as of the date the infringement began" (Tr. 743) (emphasis added). The evidence and argument at trial quoted above focused on lump sum royalty amounts associated with various licenses (PTX-62). Not a word was said at trial by Glenayre to suggest that royalty payments should be spread over the entire period of infringement, as Glenayre belatedly suggests after losing at trial. As the Court knows, Glenayre chose to bet that no damages would be awarded at all, and accordingly "has only itself to blame for having gambled and lost." Kasper v. St. Mary of Nazareth Hospital, 135 F.3d 1170 (7th Cir. 1998). Thus, even if there were any uncertainty about whether the $12 million damage award represented a lump sum or some kind of sequence of annual payments (which there is not), the burden of that uncertainty falls solely on Glenayre, the infringer. Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc., 761 F.2d 649, 655 (Fed. Cir. 1985) ("Fundamental principles of justice require us to throw any risk of uncertainty upon the wrongdoer rather than upon the injured party.").

Glenayre says "Jackson's own presentation to the jury establishes that the reasonable royalty percentage should be applied to sales as they accrue. *See, generally*, Trail [sic] Transcript at 673-677" (Br. at 2). This is sheer fantasy; what actually appears in the cited material is the suggestion that "it can be a lump-sum payment" (Tr. 676) – there is not one word about a "running royalty."

**B.    The Prime Rate Of Interest Should Be Used,
Not Glenayre's Proposed Low Interest Rates**

### 1.    The Seventh Circuit Uses The Prime Rate

Since prejudgment interest is not unique to patent law, it is governed by regional circuit

precedent:

> [T]he rationale for awarding interest to successful plaintiffs is also not particular
> to patent law; prejudgment interest, like all monetary interest, is simply
> compensation for the use or forbearance of money owed. ... No matter what area
> of law is considered, prejudgment interest, when awarded, is part of a successful
> plaintiff's complete compensation. ... We conclude that we must ... defer to Sixth
> Circuit law.

Transmatic, Inc. v. Gulton Industries, Inc., 180 F.3d 1343, 1347-48 (Fed. Cir. 1999); see also,

Tronzo v. Biomet, Inc., 318 F.3d 1378, 1381 (Fed. Cir. 2003) (citing Transmatic as "applying

regional circuit law to determination of interest and date of accrual").

In Gorenstein, the Seventh Circuit held that the prime rate is appropriate where (as here)

there is no statutory interest rate:

> ***For the future, we suggest that district judges use  the prime rate for fixing
> prejudgment interest where there is no statutory  interest rate.*** That is a readily
> ascertainable figure which provides a reasonable although rough estimate of the
> interest rate  necessary to compensate plaintiffs not only for the loss of the use of
> their money but also for the risk of default.  The defendant who has violated the
> plaintiff's rights is in effect a debtor of the plaintiff until the judgment is entered
> and paid or otherwise collected. At any time before actual payment or collection
> of the judgment the defendant may default and the plaintiff come up empty-handed.

Id. at 436 (emphasis added).  See also, e.g., Mendenhall v. Barber-Greene Co., 1990 U.S. Dist.

LEXIS 13314, *5-*6 (N.D. Ill. 1990) (using prime rate).

4

## 2.    Glenayre Posed A Substantial Credit Risk

Glenayre submits a declaration from its "damage expert" who did *not* testify at trial, but who now insists that "T-bill" or "CD" rates should be used. No support is provided for this assertion – no actual loan documents, no quotations from banks, nothing. Most of all, no evidence that Mr. Jackson could have afforded to make a loan at the disadvantageous interest rates Glenayre wants to apply. The *prime rate* is the logical rate to use, as the Seventh Circuit held in Gorenstein (which Glenayre does not bother to cite).

Glenayre next insists "Jackson did not give an involuntary loan to Glenayre" (Br. at 2). Nonsense. As this Court held in a case Mr. Jackson cited in his motion, but which Glenayre simply ignores:

> *Winners in litigation are not called "judgment creditors" for nothing. They have made a large, involuntary, unsecured loan to a debtor of uncertain credit-worthiness that is doing its utmost to avoid paying.* In the market the rate of interest on such loans greatly exceeds the rate the United States Government has to pay -- a rate that economists usually call the "risk-free rate." Plaintiffs did not make a risk-free loan.

In the Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation, 831 F. Supp. 1354, 1394 (N.D. Ill. 1993) (emphasis added), aff'd sub nom. Quinton Instruments Co. v. Impra, Inc., 71 F.3d 1573 (Fed. Cir. 1995). "The plaintiff is an unsecured, uninsured creditor," Gorenstein, 874 F.2d at 436, and Mr. Jackson, the plaintiff in this case, certainly did not volunteer to permit Glenayre to infringe his patent.

Glenayre boasts that it has lots of money, so Mr. Jackson should have been happy to make an involuntary loan to it at the lowest interest rate Glenayre could find (Br. at 2). That argument was rejected in the Mahurkar decision quoted above.

5

Moreover, what Glenayre neglects to tell this Court is that, as a result of its surprise abandonment of an unfinished office building in Vancouver, it was sued in 2002 (during the damages period in this lawsuit) for $70 million in just one of at least six lawsuits, with the city of Vancouver also investigating complaints from local businesses that Glenayre caused "major land subsidence over 16 acres around the site":

> Developer Jake Bergen claims Glenayre officials already knew they were pulling out of Vancouver at the time they executed a 15-year lease with him in March of 2001. This after 18 months of negotiations and personal assurances from Glenayre's president, Eric Doggett, as to the future of the relationship.
>
> * * * *
>
> Says Bergen, "They've left a pump running in their underground garage to keep water from flooding it, which is draining the adjacent water table, causing major land subsidence over 16 acres around the site."
>
> A number of local businesses have land subsidence issues they lay at the high-tech company's door. A nearby Mercedes Benz dealership is the sixth to file a damage suit, with others certain to follow.
>
> Now, the City of Vancouver is investigating because of complaints from local business owners about their property and concerns about the ongoing erosion of city streets adjacent to the Glenayre site.
>
> * * * *
>
> "I have been working in the high tech market for over 20 years and have never seen a company so blatantly disregard ethical and disclosure standards. It would appear that neither their head office nor theirshareholders have been properly informed as to their huge liabilities here in British Columbia."

("Vancouver Firm Brings $70 Million Lawsuit Against Glenayre; City of Vancouver Investigates Road Damage," 4/30/02 Newswire, Exhibit A). Is this the background of a company can plausibly claim to be just as financially stable as the government of the United States, so as to take advantage of T-bill interest rates? For that matter, Glenayre insisted at trial that its MVP sales

6

have dropped precipitously over the past year (DX-180-B, Exhibit B). Again, this hardly suggests the unparalleled financial stability Glenayre now claims it enjoys.

### C.  Monthly, Not Quarterly Interest Compounding Is Appropriate

The Seventh Circuit – and other courts – unanimously agree that prejudgment interest must be compounded:

> We also reject the Gorensteins' argument that the judge should not have awarded compound prejudgment interest. ... In *Dynamics Corp. of America v. United States*, 766 F.2d 518, 226 U.S.P.Q. (BNA) 622 (Fed. Cir. 1985), the district court's refusal to compound prejudgment interest was reversed as an abuse of discretion.

Gorenstein, 874 F.2d at 437 (emphasis added); see also, e.g., Cement Division, National Gypsum Co. v. City of Milwaukee, 144 F.3d 1111, 1116 (7th Cir. 1999); Evans v. City of Chicago, 1996 U.S. Dist. LEXIS 18388, *13 (N.D. Ill. 1996).

Glenayre suggests quarterly compounding, for no particular reason whatever. Monthly or even more frequent compounding, not quarterly, compounding is the norm for loans available to individuals like Mr. Jackson – mortgages, credit card debt, home equity loans, and the like. Assuming the prime rate and a ***non***-lump-sum award (which is contrary to the evidence and argument made (Tr. 672-77) and the instructions (Tr. 743) given at trial), alternative calculations are attached for the $12 million award paid weekly, monthly and quarterly from December 2001 through June 2003 (Supplemental Declaration of Joseph Gemini, Exhibits 4-6).

### D.  Glenayre's Cases Do Not Support Its Position

Glenayre cites Laitram Corp. v. NEC Corp., 115 F.3d 947 (Fed. Cir. 1997), for the proposition that the "T-bill rate" should be used. But, the Laitram case was tried in the Eastern District of Louisiana, id. at 949, not in the Seventh Circuit. Its holding that the Louisiana district

court did not abuse its discretion is inapplicable here in the Seventh Circuit, where <u>Gorenstein</u> supplies the rule of decision (see Subsection B-1, above). <u>Hoechst Celanese Corp.</u> v. <u>BP Chemicals Ltd.</u>, 846 F.Supp. 542 (S.D. Tx. 1994), also was not decided in the Seventh Circuit. And <u>National Presto Industries, Inc.</u> v. <u>Black & Decker, Inc.</u>, 1992 U.S. Dist. LEXIS 7145 (N.D. Ill. 1992), Glenayre's last case, was decided before <u>Transmatic</u> held that regional circuit precedent (<u>Gorenstein</u>) controls pre-judgment interest decisions in patent cases. In short, none of Glenayre's cases supports its position.

## III.  CONCLUSION

The correct prejudgment interest calculation is contained in Mr. Jackson's opening brief -- the prime rate applied to the lump-sum award of $12 million (Declaration of Joseph Gemini, Exhibit 2). For the reasons stated, it is respectfully requested that the Judgment entered on April 4, 2003 be amended to add $728,582.00 in prejudgment interest, for a total of $12,728,582.00.

Respectfully submitted,

Raymond P. Niro
Robert P. Greenspoon
William W. Flachsbart
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733

Attorneys for Philip Jackson and PMJ Family Limited Partnership

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **JACKSON'S REPLY IN SUPPORT OF HIS MOTION TO AMEND JUDGMENT TO ADD PREJUDGMENT INTEREST** was served upon the below-listed counsel by:

Federal Express:     Philip P. Mann
Gregory F. Wesner
Thomas M. Donahue, Jr.
Christensen O'Connor Johnson Kindness
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101
(206) 682-8100

Hand Delivery:     Jeffrey Cole
Andrew Staes
Cole & Staes, Ltd.
321 S. Plymouth Court, Suite 1150
Chicago, IL 60604
(312) 697-0200
*Attorneys for Glenayre Electronics, Inc.*

on this 30th day of April, 2003.

# SEE CASE FILE FOR EXHIBITS